KARA HENDRICKS, ESQ.
Nevada Bar No. 07743
KYLE A. EWING, ESQ.
Nevada Bar No. 14051
MADELEINE COLES, ESQ.
Nevada Bar No. 16216
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: hendricksk@gtlaw.com
ewingk@gtlaw.com
madeleine.coles@gtlaw.com

*Attorneys for Plaintiff Geoff Winkler, in his Capacity as a Court-Appointed Receiver*



**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

GEOFF WINKLER, as court-appointed receiver for J&J CONSULTING SERVICES INC., et al.,

Plaintiff,

v.

YEE MAR, an individual; JORDAN JUDD, an individual; LISA LAMB an individual; MATTHEW T. BEASLEY, an individual; LOA RAE WORTHEN, an individual, in her capacity as trustee of THE WORTHEN FAMILY TRUST; KENNEDY JUDD,an individual; NICOLE GREY, an individual; CLAY WILLMOTT, an individual; PRICILLA ROSEGREEN, an individual; ASHLEY HULLEMAN, an individual; DAWN NAPOLITAN, an individual; JORDAN M. CROW, an individual; PARKER JUDD, an individual; JESSE LOPEZ, an individual; ANTHONY ALBERTO SR., an individual; KAREN MADSEN, an individual; ALYSSA N. QUILES, an individual; WAYNE THYGESEN, an individual; and PRESTON JUDD, an individual,

Defendants.

CASE NO.

**COMPLAINT FOR FRAUDULENT TRANSFER**

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

Plaintiff Geoff Winkler (the "***Receiver***"), in his capacity as the court-appointed receiver for nonparties J&J Consulting Services, Inc., an Alaska corporation; J&J Consulting Services, Inc., a Nevada corporation; J and J Purchasing LLC; The Judd Irrevocable Trust; and BJ Holdings LLC (collectively, the "***Receivership Entities***" or the "***J&J Enterprise***"), together with their subsidiaries and affiliates, brings this action against Defendants to recover fraudulent transfers made by the Receivership Entities to Defendants, as further detailed below.

**PARTIES**

1. Plaintiff Geoff Winkler was appointed by the United States District Court for the District of Nevada in an enforcement action brought by the Securities and Exchange Commission (the "***SEC***") and captioned *SEC v. Matthew Wade Beasley, et al.*, bearing Case No. 22-cv-00612-CDS-EJY (the "***Receivership Action***") to serve as the Receiver for the J&J Enterprise.[1] Mr. Winkler is a citizen of Oregon and a resident of Marion County, Oregon. He brings this action solely in his capacity as the court-appointed Receiver, and not in his individual capacity.

2. At relevant times, the business and affairs of the J&J Enterprise were conducted through a Nevada corporation formed in 2005, J&J Consulting Services, Inc., and controlled by Receivership Defendant and nonparty Jeffrey Judd.

3. Prior to being placed into receivership, including at all times relevant here, the J&J Enterprise's principal place of business, including for each separate Receivership Entity, was in Las Vegas, Nevada.

4. On information and belief, Yee Mar is a citizen of Missouri.

5. On information and belief, Jordan Judd is a citizen of Nevada.

6. On information and belief, Lisa Lamb is a citizen of Utah.

7. On information and belief, Matthew T. Beasley is a citizen of Nevada.

[1] Mr. Winkler was also appointed Receiver over the Wells Fargo Interest on Lawyers' Trust Account ending in 5598 and held in the name of Beasley Law Group PC – through which the defendants to the Receivership Action funneled many of the funds alleged here to have been fraudulently transferred. He was also appointed Receiver over the personal assets of Matthew Wade Beasley; Jeffrey J. Judd; Christopher R. Humphries; Shane M. Jager; Jason M. Jongeward; Denny Seybert; and Roland Tanner (together with the Receivership Entities, the "***Receivership Defendants***"). Finally, Mr. Winkler was also appointed the Receiver over certain "relief" defendants in the Receivership Action.

8. On information and belief, Loa Rae Worthen is a citizen of California.

9. On information and belief, Kennedy Judd is a citizen of Nevada.

10. On information and belief, Nicole Grey is a citizen of Nevada.

11. On information and belief, Clay Willmott is a citizen of Kentucky.

12. On information and belief, Priscilla Rosegreen is a citizen of Nevada.

13. On information and belief, Ashley Hulleman is a citizen of California.

14. On information and belief, Dawn Napolitan is a citizen of Nevada.

15. On information and belief, Jordan Crow is a citizen of Arizona.

16. On information and belief, Parker Judd is a citizen of Nevada.

17. On information and belief, Jesse Lopez is a citizen of California.

18. On information and belief, Anthony Alberto Sr. is a citizen of New Jersey.

19. On information and belief, Karen Madsen is a citizen of Nevada.

20. On information and belief, Alyssa N. Quiles is a citizen of Nevada.

21. On information and belief, Wayne Thygesen is a citizen of Kansas.

22. On information and belief, Preston Judd is a citizen of California.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

## JURISDICTION, AND VENUE

23. The Court has jurisdiction over the parties and over this cause of action pursuant to 28 U.S.C. §§ 754 and 1367 in that this action, brought by the Receiver, arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the Receivership Action, which is currently pending in this District (the "***Receivership Court***").

24. Pursuant to its June 3, 2022, Order Appointing Receiver (the "***Appointment Order***"), the Receivership Court took "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated" of the Receivership Defendants, as defined above, after finding that "appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the [Receivership D]efendants and those assets of certain Relief Defendants that … are attributable to funds derived from investors or clients of the [Receivership D]efendants …. [or] were fraudulently transferred by the [Receivership D]efendants …."

25. Put differently, the Receivership Court has exercised *in rem* jurisdiction over the object of this lawsuit.

26. The Court also has personal jurisdiction over those Defendants residing in Nevada, as alleged above.

27. Further, the Court has personal jurisdiction over all Defendants because Defendants purposefully availed themselves of the privileges of conducting activities within the State of Nevada by accepting what turned out to be illicit funds from a Nevada lawyer's trust account in Nevada, which funds were ostensibly the property of a Nevada corporation with a known principal place of business of Las Vegas, Nevada.

28. Venue in the District of Nevada is proper under 28 U.S.C. § 1391 because this action is an ancillary proceeding to the Receivership Action, which is pending in this District. Additionally, Defendants' actions, as described in this Complaint, emanated primarily to and from Clark County, Nevada.

## BACKGROUND ALLEGATIONS

### SEC ACTION AND APPOINTMENT OF RECEIVER

29. The Receivership Action stems from a long-running Ponzi-scheme perpetrated by attorney Matthew Beasley; his law firm, the Beasley Law Group; Receivership Defendant Jeffrey Judd; Receivership Defendant Christopher Humphries; and the Receivership Entities, with substantial assistance from others, including, without limitation, the other defendants named in the Receivership Action.

30. In the Receivership Action, the SEC alleges that from at least 2017 and continuing through March 2022, the Receivership Entities offered investments in purported settlement contracts with tort plaintiffs called "purchase agreements," which the SEC alleges constitute securities under federal law.

31. According to the SEC's Complaint, promoters of the J&J Enterprise told investors they could invest in insurance tort settlements and that the funds would be used to make advance payments to Plaintiffs who had reached a settlement with insurance companies and were willing to pay a premium to receive a portion of their settlement in advance.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

32. The J&J promoters are alleged to have informed investors they would receive returns of at least 12.5% every 90 days, for an annualized return of 50% or more and that Beasley and the Beasley Law Group managed relationships with numerous personal injury attorneys around the country to maintain a supply of purchase agreements to the J&J Enterprise and its investors.

33. These purported "investments" were memorialized by "purchase agreements" between the Receivership Entities and various tort plaintiffs and their attorneys.

34. However, the purchase agreements upon which the Settlement Scheme were based were fictitious, and the funds provided by investors were, in fact, used to fund lavish lifestyles, including, among other things, luxury homes and properties, a private jet, ATVs, and boats.

35. The promoters of the J&J Enterprise recruited hundreds of investors into the scheme and received transaction-based compensation for bringing in additional investors.

36. As set forth in minute detail in the Receiver's Forensic Accounting Report, a true and correct copy of which is attached as **Exhibit 1**, the J&J Enterprise "operated by the sixteen individual defendants and their seventy-five entities … raised $519.9 million from 1,213 investors, promising them that their investment capital would fund personal injury settlement contracts that would generate revenue worth $1.39 billion." **Ex. 1**, Executive Summary.

37. Ultimately, the J&J Enterprise came crashing down on March 3, 2022, when agents from the FBI executed search warrants at the homes of Judd, Humphries, and Beasley.

38. When agents from the FBI attempted to execute their warrant at Beasley's residence, Beasley drew a weapon, ultimately resulting in his being shot twice, non-fatally, and a standoff ensued.

39. Following the hours-long standoff, Beasley was taken into custody, where he remains to date.

40. On April 12, 2022, the SEC filed a complaint in the Receivership Action.

41. On June 3, 2022, Plaintiff here was appointed as the permanent receiver for the J&J Enterprise, as well as specified assets of other entities and individuals holding Receivership Property, as set forth in detail in the Appointment Order.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

**Fraudulent Transfers to Defendants from the Receivership Entities**

42. In connection with his forensic accounting activities, the Receiver carefully reconstructed the books of the J&J Enterprise.

43. Upon completion of the Forensic Accounting Report, the Receiver identified dozens of individuals who appeared to receive transfers of funds from the Receivership Entities without exchanging goods or services of reasonably equivalent value.

44. The Receiver has identified the Defendants named herein as individuals who are the recipients of such fraudulent transfers from the Receivership Entities.

45. These Defendants are or appear to be family members, friends, and other associates of the individual Receivership Defendants, and/or other employees or promoters of the J&J Ponzi.

46. Regardless of their affiliation to the J&J Enterprise, for each Defendant, the Receiver was not able to identify any evidence of these third-party transferees providing any material, legitimate, and/or valuable goods or services to the J&J Enterprise, let alone reasonably equivalent value for the amount of funds transferred, despite the Receiver's extensive and years-long investigation of the affairs of the Enterprise.

47. To the contrary, the transfers appear to be gratuitous "gifts," informal "loans," unverified "asset purchases," or other transfers for no exchange of value initiated by the individual Receivership Defendants to illicitly divert fraudulently raised funds to their family, friends, or other associates in order to extract a further personal benefit from the Enterprise.

48. Accordingly, Defendants are liable to the Receivership Estate for the funds transferred to them.

49. For instance, the Receivership Entities fraudulently transferred a net total of $25,000.00 to Defendant Mar without an exchange of reasonably equivalent value.

50. Similarly, the Receivership Entities fraudulently transferred a net total of $37,500.00 to Defendant Jordan Judd without an exchange of reasonably equivalent value.

51. The Receivership Entities fraudulently transferred a net total of $51,000.00 to Defendant Lamb without an exchange of reasonably equivalent value.

52. The Receivership Entities fraudulently transferred a net total of $52,500.00 to

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

Defendant Beasley without an exchange of reasonably equivalent value.

53. The Receivership Entities fraudulently transferred a net total of $65,000.00 to The Worthen Family Trust without an exchange of reasonably equivalent value.

54. The Receivership Entities fraudulently transferred a net total of $768,568.00 to Defendant Kennedy Judd without an exchange of reasonably equivalent value.

55. The Receivership Entities fraudulently transferred a net total of $85,000.00 to Defendant Grey without an exchange of reasonably equivalent value.

56. The Receivership Entities fraudulently transferred a net total of $94,000.00 to Defendant Willmott without an exchange of reasonably equivalent value.

57. The Receivership Entities fraudulently transferred a net total of $100,000.00 to Defendant Rosegreen without an exchange of reasonably equivalent value.

58. The Receivership Entities fraudulently transferred a net total of $102,150.00 to Defendant Hulleman without an exchange of reasonably equivalent value.

59. The Receivership Entities fraudulently transferred a net total of $137,340.00 to Defendant Napolitan without an exchange of reasonably equivalent value.

60. The Receivership Entities fraudulently transferred a net total of $175,851.00 to Defendant Crow without an exchange of reasonably equivalent value.

61. The Receivership Entities fraudulently transferred a net total of $1,042,231.00 to Defendant Parker Judd without an exchange of reasonably equivalent value.

62. The Receivership Entities fraudulently transferred a net total of $360,000.00 to Defendant Lopez without an exchange of reasonably equivalent value.

63. The Receivership Entities fraudulently transferred a net total of $644,210.00 to Defendant Alberto Sr. without an exchange of reasonably equivalent value.

64. The Receivership Entities fraudulently transferred a net total of $750,000.00 to Defendant Karen Madsen without an exchange of reasonably equivalent value.

65. The Receivership Entities fraudulently transferred a net total of $186,500.00 to Defendant Quiles without an exchange of reasonably equivalent value.

66. The Receivership Entities fraudulently transferred a net total of $139,824.00 to

Defendant Thygesen without an exchange of reasonably equivalent value.

52. The Receivership Entities fraudulently transferred a net total of $662,205.00 to Defendant Preston Judd without an exchange of reasonably equivalent value.

67. The transfers to Defendants from the J&J Enterprise described above were made from the fruits of the fraudulent scheme; specifically, these transfers were made from principal "investment money" from new and/or existing investors' principal investment money.

68. These transfers were not comprised of earned revenues, interest, or returns on investments in connection with the settlement contracts the Receivership Entities purported to make or otherwise; indeed, the Receiver is not aware of a single non-fictitious settlement contract, a single dollar "loaned" to a settling plaintiff, or a single dollar of "interest" repaid from such a settling plaintiff.

69. Put differently, never during the life of the J&J Enterprise were *any* legitimate revenues from the purchase or sale of settlement contracts earned, let alone revenue sufficient to meet the current or long-term debt obligations of the Enterprise that were being created—and accumulated—every time one of the Receivership Defendants or another promoter brought a new investor into the "fold."

70. The representations made by the Receivership Defendants and/or other promoters to investors were untrue, and in fact (a) hundreds of millions of dollars were used for Ponzi payments and unauthorized personal and so-called business expenses such as the transfers to the Defendants here; (b) any investor returns and "commissions" to Enterprise insiders were entirely fictitious and funded solely by the influx of new and additional investor money; (c) the J&J Enterprise was never profitable and consistently operated "in the red"; and (d) all of that being the case, the J&J Enterprise was never solvent-its liabilities were greater than its assets (and it was unable to pay its debts as they became due) from the moment it entered the first settlement purchase contract with an "investor."

71. The J&J Enterprise never had any revenue-generating assets and thus could not have produced income sufficient to service even one settlement contract.

72. In truth, the Receivership Entities derived their assets from investor principal

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938-6856

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

investments, which the Receivership Defendants consistently commingled; nevertheless, the J&J Enterprise and those working for it represented to investors and potential investors that the J&J Enterprise was wildly profitable and that the investments were guaranteed because the settlements were already in hand and the funds to repay the settlement advances were supposedly to be provided from heavily regulated, institutional insurance companies.

73. The principal investment money from new investors, the existing investors' principal investment money, and the existing investors' additional principal investment money should have been used for the J&J Enterprise's stated purpose, which was purportedly funding tort settlements.

74. Instead, the Receivership Defendants caused the J&J Enterprise to divert investor funds for numerous unauthorized and illicit uses, including fraudulent transfers to the Defendants here to fund the individual Receivership Defendants' and their families' lavish lifestyles.

75. Regardless of whether the Defendants were aware that the J&J Enterprise was a Ponzi scheme, or was otherwise fraudulent, to allow Defendants to keep monies they received from the Receivership Entities would be inequitable and unjust, including to the J&J investors.

## FIRST CLAIM FOR RELIEF

(AVOIDANCE OF FRAUDULENT TRANSFERS UNDER NRS 112.180(1)(A))

76. The Receiver re-alleges each allegation set forth above.

77. The Receivership Entities, at all relevant times, were "debtors" to their "investors," as debtor is defined in NRS 112.150(6).

78. Because the individual Receivership Defendants intentionally and wrongfully caused the Receivership Entities to transfer investors' principal investment monies to Defendants as described above, the Receivership Entities, through the Receiver as creditor, have a right to repayment of the wrongfully transferred amounts.

79. The transfers of monies that the individual Receivership Defendants caused the Receivership Entities to make to Defendants were inherently fraudulent and made with actual intent to hinder, delay, or defraud the Receivership Entities because the transfers were made as part of the individual Receivership Defendants' efforts to divert investor funds for their own

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

benefit.

80. The fact that the J&J Enterprise never received any revenue from any "real" settlement purchase contract demonstrates that the Receivership Entities, as a practical matter, were persistently insolvent, as the individual Receivership Defendants must have known or should have known.

81. In addition, the transfers to Defendants complained of here were made for less than reasonably equivalent value or fair consideration and at a time when the J&J Enterprise was (i) engaged or was about to engage in a business or a transaction for which the remaining assets of the Enterprise were unreasonably small in relation to the business or transaction and/or (ii) the Receivership Entities intended, believed, or should have believed they would incur debts beyond their ability to pay as they became due.

82. Further, the Receivership Entities were insolvent at the time of the transfer(s) or became insolvent after the transfer(s) occurred.

83. The transfers are therefore avoidable pursuant to the Uniform Fraudulent Transfer Act, NRS 112.140 *et seq.*

84. The Receiver is entitled to exercise rights under NRS 112.210.

85. As it has now become necessary for the Receiver to engage the services of legal counsel to prosecute this action, and because the Defendants here are in contempt of the Receivership Court's Appointment Order, which requires the turnover of Receivership Property fraudulently transferred by the Receivership Entities to the Receiver by all Parties with actual notice of the Appointment Order, the Receiver is entitled to recover the attorney fees and costs he has incurred and continues to incur in this action.

## **SECOND CLAIM FOR RELIEF**

(AVOIDANCE OF FRAUDULENT TRANSFERS UNDER NRS 112.180(1)(B))

86. The Receiver re-alleges each allegation set forth above.

87. The Receivership Entities, at all relevant times, were "debtors" to their "investors," as debtor is defined in NRS 112.150(6).

88. Because the individual Receivership Defendants intentionally and wrongfully

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

caused the Receivership Entities to transfer investors' principal investment monies to Defendants as described above, the Receivership Entities, through the Receiver as creditor, have a right to repayment of the wrongfully transferred amounts.

89. The transfers of monies that the individual Receivership Defendants caused the Receivership Entities to make to Defendants were inherently fraudulent and made with actual intent to hinder, delay, or defraud the Receivership Entities because the transfers were made as part of the individual Receivership Defendants' efforts to divert investor funds for their own benefit.

90. The fact that the J&J Enterprise never received any revenue from any "real" settlement purchase contract demonstrates that the Receivership Entities, as a practical matter, were persistently insolvent, as the individual Receivership Defendants must have known or should have known.

91. In addition, the transfers to Defendants complained of here were made for less than reasonably equivalent value or fair consideration and at a time when the J&J Enterprise was (i) engaged or was about to engage in a business or a transaction for which the remaining assets of the Enterprise were unreasonably small in relation to the business or transaction and/or (ii) the Receivership Entities intended, believed, or should have believed they would incur debts beyond their ability to pay as they became due.

92. Further, the Receivership Entities were insolvent at the time of the transfer(s) or became insolvent after the transfer(s) occurred.

93. The transfers are therefore avoidable pursuant to the Uniform Fraudulent Transfer Act, NRS 112.140 *et seq.*

94. The Receiver is entitled to exercise rights under NRS 112.210.

95. As it has now become necessary for the Receiver to engage the services of legal counsel to prosecute this action, and because the Defendants here are in contempt of the Receivership Court's Appointment Order, which requires the turnover of Receivership Property fraudulently transferred by the Receivership Entities to the Receiver by all Parties with actual notice of the Appointment Order, the Receiver is entitled to recover the attorney fees and costs he

has incurred and continues to incur in this action.

**THIRD CLAIM FOR RELIEF**

(AVOIDANCE OF FRAUDULENT TRANSFERS UNDER NRS 112.190)

96. The Receiver re-alleges each allegation set forth above.

97. The Receivership Entities, at all relevant times, were “debtors” to their “investors,” as debtor is defined in NRS 112.150(6).

98. Because the individual Receivership Defendants intentionally and wrongfully caused the Receivership Entities to transfer investors’ principal investment monies to Defendants as described above, the Receivership Entities, through the Receiver as creditor, have a right to repayment of the wrongfully transferred amounts.

99. The transfers of monies that the individual Receivership Defendants caused the Receivership Entities to make to Defendants were inherently fraudulent and made with actual intent to hinder, delay, or defraud the Receivership Entities because the transfers were made as part of the individual Receivership Defendants’ efforts to divert investor funds for their own benefit.

100. The fact that the J&J Enterprise never received any revenue from any “real” settlement purchase contract demonstrates that the Receivership Entities, as a practical matter, were persistently insolvent, as the individual Receivership Defendants must have known or should have known.

101. In addition, the transfers to Defendants complained of here were made for less than reasonably equivalent value or fair consideration and at a time when the J&J Enterprise was (i) engaged or was about to engage in a business or a transaction for which the remaining assets of the Enterprise were unreasonably small in relation to the business or transaction and/or (ii) the Receivership Entities intended, believed, or should have believed they would incur debts beyond their ability to pay as they became due.

102. Further, the Receivership Entities were insolvent at the time of the transfer(s) or became insolvent after the transfer(s) occurred.

103. The transfers are therefore avoidable pursuant to the Uniform Fraudulent Transfer

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856

Act, NRS 112.140 *et seq.*

104. The Receiver is entitled to exercise rights under NRS 112.210.

105. As it has now become necessary for the Receiver to engage the services of legal counsel to prosecute this action, and because the Defendants here are in contempt of the Receivership Court's Appointment Order, which requires the turnover of Receivership Property fraudulently transferred by the Receivership Entities to the Receiver by all Parties with actual notice of the Appointment Order, the Receiver is entitled to recover the attorney fees and costs he has incurred and continues to incur in this action.

## FOURTH CLAIM FOR RELIEF

(UNJUST ENRICHMENT)

106. The Receiver re-alleges each allegation set forth above.

107. Defendants received a benefit when, during the course of the scheme, the individual Receivership Defendants caused the Receivership Entities to transfer money to them.

108. Defendants knowingly and voluntarily accepted and retained the transferred monies.

109. The circumstances alleged in this complaint render Defendants' retention of that benefit inequitable and unjust.

110. Pursuant to all applicable law and principles of equity, and to the extent any transfers to Defendants cannot be unwound and/or disgorged pursuant to the preceding claims for relief, the Receiver is entitled to a judgment against Defendants in the net amount of J&J Enterprise funds each received.

WHEREFORE, the Receiver asks this Court to:

1. Enter judgment against Defendants in the net amount of monies each defendant received from the J&J Enterprise, whether by way of a fraudulent transfer or as an unjust benefit;

2. Enter an award in the Receiver's favor for the reasonable attorneys' fees and costs the Receivership Estate incurred in bringing this action;

3. Enjoin any further dissipation by Defendants of the fraudulently transferred funds described above; and

4. Order any further relief that the Court under law or principles of equity deems just and proper under the law or under principles of equity.

DATED this 31st day of March, 2026.

GREENBERG TRAURIG, LLP

By: /s/ Kara B. Hendricks

KARA B. HENDRICKS, Bar No. 07743
KYLE A. EWING, Bar No. 014051
MADELEINE COLES, Bar No. 16216

***Attorneys for Plaintiff Geoff Winkler, in his Capacity as a Court-Appointed Receiver***

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive Suite 600 , Las Vegas, Nevada 89135
Telephone: (702) 938- 6856