KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
**KERR SIMPSON ATTORNEYS AT LAW**
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: taylor@kerrsimpsonlaw.com
*Attorneys for Defendant Matthew T. Beasley*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

GEOFF WINKLER, as court-appointed receiver for J&J CONSULTING SERVICES INC., et al.,

Plaintiff,

v.

YEE MAR, an individual; JORDAN JUDD, an individual; LISA LAMB an individual; MATTHEW T. BEASLEY, an individual; LOA RAE WORTHEN, an individual, in her capacity as trustee of THE WORTHEN FAMILY TRUST; KENNEDY JUDD, an individual; NICOLE GREY, an individual; CLAY WILLMOTT, an individual; PRICILLA ROSEGREEN, an individual; ASHLEY HULLEMAN, an individual; DAWN NAPOLITAN, an individual; JORDAN M. CROW, an individual; PARKER JUDD, an individual; JESSE LOPEZ, an individual; ANTHONY ALBERTO SR., an individual; KAREN MADSEN, an individual; ALYSSA N. QUILES, an individual; WAYNE THYGESEN, an individual; and PRESTON JUDD, an individual,

Defendants.

Case No.: 2:26-cv-00996-JCM-NJK

**DEFENDANT MATTHEW T. BEASLEY'S MOTION TO DISMISS RECEIVER'S COMPLAINT PURSUANT TO FRCP 12(b)(6)**

Defendant, MATTHEW T. BEASLEY ("Defendant"), by and through his attorney, P. STERLING KERR, ESQ. of KERR SIMPSON ATTORNEYS AT LAW, respectfully moves

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

this Court to dismiss the claims in Plaintiff's Complaint (ECF No. 1) against him pursuant to FRCP 12(b)(6).

This Motion is made and based upon the following Memorandum of Points and Authorities, the Appendix of Exhibits filed concurrently herewith, the papers and pleadings on file herein, and such oral argument as may be adduced at a hearing of this matter.

DATED: June 29, 2026.

**KERR SIMPSON ATTORNEYS AT LAW**

/s/P. Sterling Ker, Esq
P. STERLING KERR, ESQ.
Nevada Bar No. 003978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: taylor@kerrsimpsonlaw.com
*Attorneys for Defendant Matthew T. Beasley*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Court should dismiss Plaintiff's claims as to Defendant because Plaintiff's claims fail as a matter of law. This action is an effort by Plaintiff Geof Winkler, a court-appointed receiver ("Plaintiff" or the "Receiver"), to recover alleged fraudulent transfers made by J&J Consulting Services, Inc. (and its operators) to family and insiders in an alleged Ponzi scheme. While federal receivership courts possess broad equitable powers, those powers do not override statutory limitations imposed by state law. The Receiver's claims here are governed by Nevada's Uniform Fraudulent Transfer Act ("UFTA"), NRS Chapter 112, which imposes strict time limits that extinguish claims entirely if not timely asserted.

The dispositive issue is straightforward. The Receiver possessed sufficient information to discover the alleged fraudulent transfers years before filing suit, yet delayed pursuing avoidance claims until well outside the statutory period. Nevada law does not permit such a delay.

The Receiver's first claim under the UFTA exceeds the statute of limitations because the Complaint was filed more than four years after the last transfer. The first claim is further barred by the statute of limitations because the Receiver's own reports establish that he had discovered or should have discovered the relevant transfers more than one year before filing the Complaint.

The Receiver's second and third claims under the UFTA similarly exceed NRS 112's limitations because the Complaint was filed more than four years after the last transfer. This Court has recently held that NRS 112's limitations that govern the Receiver's second and third claims are statutes of repose, not statute of limitations. Thus, the Receiver had to bring the action within the time constrains of NRS 112.230(1)(b-c). Further, the discovery rule, which is incorporated into NRS 112.230(1)(a) does not apply to statutes of repose.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Finally, the Receiver's last claim for unjust enrichment is legally barred because the UFTA provides an adequate remedy at law. Equitable doctrines such as restitution via unjust enrichment are barred when there is an adequate statutory remedy. Plaintiff would have had an adequate remedy under NRS 112 but for his delay to file the action within the UFTA's statute of limitations. Therefore, the Court should dismiss the Receiver's claims against Defendant with prejudice.

## II. STATEMENT OF FACTS[1]

This case stems from a long-running, 2016 through 2022, investment scheme promulgated by Matthew Beasley and others, referred to by the Receiver as the "J&J Ponzi Scheme." The alleged enterprise raised more than $500 million from individual and business investors by promising substantial returns from purported investments in personal injury settlement contracts and litigation advance funding. Early investors in the J&J Scheme reportedly received substantial returns, which in turn fueled additional investments through word-of-mouth promotion and sales representatives operating primarily in Southern Nevada and throughout the United States. Defendants in this matter were family members of Beasley (Defendant is Beasley's son) and others that allegedly received money from the J&J Scheme without providing reasonable equivalent value.

On or about March 3, 2022, the Federal Bureau of Investigation executed a raid at Matthew Beasley's residence. According to publicly reported allegations, Beasley brandished a firearm during the encounter and was shot by federal agents. Beasley allegedly retreated into the residence and engaged in a prolonged standoff while communicating with law enforcement by telephone. During those communications, Beasley reportedly admitted that the J&J operation

[1] The Facts herein are based on the allegations set forth in the Receiver's Complaint, the attached forensic accounting report, and the Receiver's pleadings in the receivership case.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

was a Ponzi scheme. Beasley was thereafter arrested, criminally charged, and has since entered into a plea agreement in the related federal criminal proceedings.

Following news of Beasley's arrest and purported confession, certain investors took immediate action to protect assets and preserve claims. Among them, Las Vegas CPA Mark Murphy filed an action in Nevada state court on March 13, 2022, styled *Murphy v. Beasley*, Case No. A-22-849806-B, in the Eighth Judicial District Court for Clark County, Nevada. That action sought equitable relief and appointment of a receiver, resulting in the appointment of Daniel Ayala as state court receiver on March 30, 2022. Upon information and belief, the state court receiver immediately began collecting records and information concerning J&J investor transactions and related assets.

Within weeks, the Securities and Exchange Commission ("SEC") commenced a parallel civil enforcement action in the United States District Court for the District of Nevada, styled *SEC v. Beasley*, Case No. 2:22-cv-00612-CDS-EJY (hereinafter the "Receivership Case." Cites to the Receivership Case will be identified as BC ECF _____.) The SEC filed its Complaint on April 12, 2022, and the Court entered an ex-parte Temporary Restraining Order and Asset Freeze the same day. On June 3, 2022, the Court entered an Order Appointing Receiver which appointed Geoff Winkler as federal equity receiver over numerous J&J entities and affiliated persons (the "Receivership Entities"). Exhibit A (BC ECF 88). The Receiver was vested with expansive authority to "assume exclusive authority and control over the Receivership Entities," "conduct such investigation and discovery as necessary," and "identify and locate outstanding assets of the Receivership Estate." *Id*. at p. 4-5.

On August 1, 2022, the Receiver reported that he had already begun collecting and reviewing "bank statements and other financial documents," begun reviewing "communications with investors," begun reviewing related financial data necessary to investigate the Receivership

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Entities' operations and investor transactions. As of June 30, 2022 there were 491 known investors. Exhibit B at 16:3-10, 16:22-26, and 17:1-3BC (ECF No. 215). By October 2022, the Receiver expressly acknowledged that he had "started the forensic accounting process" concerning the Receivership Entities and investor transactions. Exhibit C at 5:15-23 (BC ECF No. 343. The Receiver further represented that he was analyzing financial records and tracing investor-related transfers through the Receivership Entities' accounts. *Id.* Throughout 2023, the Receiver continued gathering and analyzing investor records and transactional data. The Receiver reported ongoing review of "bank statements and other financial documents," "communications with investors," the "financial activities of the Receivership Entities," and, as of January 31, 2023, there were 850 known investors. Exhibit D at 5:13-24, 6:1-10 (BC ECF No. 452).

Significantly, despite possessing investor transaction data and conducting forensic accounting throughout 2022 and 2023, none of the Receiver's First through Sixth Quarterly Reports referenced "clawback" litigation, "net winners," avoidance actions, or fraudulent transfer litigation against investors or others. *See* Exhibits B - G. Before July 2023, when the receiver filed his Fifth Quarterly Report, the receiver had identified 1,148 investors of the eventual total of 1,213 the Receiver cites to in the forensic accounting report attached to his Complaint (hereinafter the "FAR"). Exhibit F (BC ECF 556). Hence, the Receiver knew of 95% of the investors and their corresponding transfers approximately three years prior to filing the action. *Id.* at 5:3-5. It stands to reason that since the Receiver knew of the majority of the investors, he also knew of the alleged fraudulent transfers from the J&J accounts to family members and insiders through the above-referenced subpoenaed bank records and accounting analysis.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

It was not until January 31, 2024, nearly two years after the collapse of the J&J enterprise, that the Receiver first disclosed potential "claw-back proceedings." Exhibit H (BC ECF 637). Specifically, the Receiver stated that "the Receiver continues to investigate potential targets where . . . claw-back proceedings would be appropriate." *Id.* at 9:3-10. Thereafter, the Receiver continued categorizing investors and identifying those investors who allegedly "received funds in excess of their investment," commonly referred to as "net winners." Exhibit I at 11:8-11 (BC ECF 672). Given access to Defendant, Matthew Beasley Sr's accounts in 2022, there is no reason the Receiver should have waited to sue "friends and family" were there was an alleged benefit without reasonable equivalent value.

By no later than March 31, 2025, the Receiver had completed and filed the FAR concerning investor transactions and distributions in the Receivership Estate. The filing of that forensic accounting necessarily required that the Receiver and his retained professionals to have already identified the relevant investors, traced the transfers at issue, calculated the amounts allegedly received by investors, and determined which investors purportedly qualified as "net winners." The forensic accounting outlined in the FAR necessarily would have identified the fraudulent transfer defendants, including the Defendant Matthew Beasley, Jr. The Receiver's forensic accountants and financial professionals were retained directly by, and acted under the authority and supervision of, the Receiver in furtherance of the receivership investigation and anticipated litigation efforts.

The Receiver's reports establish that he possessed investor records, bank data, communications, and forensic accounting information years before initiating these actions. The Receiver's delay therefore cannot be attributed to any inability to discover the alleged transfers or identify the purported net winners or fraudulent transferees. Instead, the chronology reflected in the Receiver's own quarterly reports demonstrates a deliberate and prolonged investigative

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

process extending years beyond the point at which the relevant facts were known or reasonably ascertainable. Under Nevada law, such delay does not suspend the extinguishment provisions of NRS 112.230.

The Receiver's own reports establish the following chronology:

1. By mid-2022, the Receiver had obtained investor bank records, communications, and transactional information. Exhibit B.

2. By October 2022, the Receiver had initiated forensic accounting concerning investor transfers and distributions. Exhibit C at 5:15-23.

3. Throughout 2023, the Receiver continued analyzing investor-specific transactions, financial records, and investor positions. Exhibit D at 5:13-24.

4. Before July 2023 when the receiver filed his Fifth Quarterly Report, the Receiver had identified 1,148 investors of the eventual total of 1,213 the Receiver cites to in the final forensic accounting. Thus, the Receiver knew of 95% of the investors and their associated transactions approximately three years prior to filing the action. Exhibit F at 5:3-5.

5. By January 31, 2024, the Receiver expressly acknowledged that "claw-back proceedings" against investors were under investigation. Exhibit H at 9:3-10.

6. Before May of 2024, the Receiver had categorized investors, including those who allegedly "received funds in excess of their investment," i.e., alleged "net winners." Exhibit I at 11:8-11);

7. In January of 2025, the receiver states the forensic accounting is essentially done. Exhibit J at 5:17-18.

8. Before March 31, 2025, when the Receiver filed the FAR prepared by professionals retained by and working directly for the Receiver, the Receiver necessarily possessed the identities of the alleged "net winners," the transfer histories associated with those investors, and the Receiver's own damages calculations concerning alleged excess distributions. In addition, the alleged fraudulent transferees would have been identified before the filing of the FAR and as early as mid-2022 when the Receiver had the the bank records of J&J Consulting Services, Inc. Exhibit L.

Despite having obtained investor records, bank data, and initiating forensic accounting as early as 2022, the Receiver did not file the present lawsuits against alleged net winners or alleged fraudulent transferees such as Defendant Beasley, Jr., until March 31, 2026. This prolonged

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

delay occurred notwithstanding the Receiver's early access to critical information and reflects a substantial lapse between the discovery of the underlying facts and the initiation of litigation. The Receiver's own reports thus establish a clear chronology. He began collecting investor and fraudulent transferee transaction data in 2022, initiated forensic accounting that same year, continued reviewing and analyzing investor and fraudulent transfer transactions throughout 2023, yet did not identify or pursue "clawback" litigation until 2024. This timeline demonstrates that any delay in asserting claims was the result of the Receiver's internal investigative process, not a lack of discoverable facts. Despite possessing this information for years, the Receiver did not file the present claims until March 31, 2026. This delay is fatal under Nevada law.

## III. LEGAL STANDARD

This Motion to Dismiss is brought under FRCP 12(b)(6) Failure to State a Claim. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Dismissal is appropriate where a claim is barred by the statute of limitations and the running of the statute is apparent from the face of the complaint or matters subject to judicial notice (Receiver's Quarterly Reports). *See*, *e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (holding that dismissal on statute of limitations grounds is appropriate at the Rule 12(b)(6) stage explaining that "a motion to dismiss based on the running of the statute of limitations may be granted only if the assertions of the complaint… would not permit the plaintiff to prove that the statute was tolled").

## IV. REQUEST FOR JUDICIAL NOTICE

Review on a motion to dismiss under FRCP 12(b)(6) is normally limited to the four corners of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "If the district court relies on materials outside the pleadings in making its ruling, it must treat the

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond." Fed R. Civ. P. 12(b); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). There are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Under the incorporation-by-reference doctrine a court may, consider certain materials—documents attached to the complaint and documents incorporated by reference in the complaint without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a ruling on a Rule 12(b)(6) motion to dismiss. If a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to it. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

The second exception is set forth in Federal Rule of Evidence 201 which permits a court to take judicial notice of a fact that is not subject to reasonable dispute. Fed. R. Evid. 201. A fact is not subject to reasonable dispute if it is generally known or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). A court may take judicial notice of pleadings filed in a related action. *Burbank-Glendale-Pasadena Airport Author. V. Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998); *see also* Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741 n.6 (9th Cir. 2006).

Here, Defendant requests that the Court take judicial notice of the Receivership Case, the pleadings referenced as exhibits herein which exhibits are set forth in the Appendix filed concurrently herewith, and the FAR which is attached to the Receiver's Complaint. The exhibits

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

include the order appointing receiver, the quarterly reports, and a motion filed by the Receiver in the Receivership case. The Receiver's claims are predicated on the information contained in the exhibits. Furthermore, the authenticity of the documents are not subject to reasonable dispute as they are filed by the Receiver in the Receivership Case. Therefore, Defendant requests that the Court take judicial notice of said documents.

## V. LEGAL ARGUMENT

### a. The Receiver's First Claim for Avoidance Pursuant to NRS 112.180(1)(a) is Barred by the Statute of Limitations.

#### *i. The Claim Exceeds Four Years After the Last Transaction to Defendant.*

The Court should dismiss the Receiver's fraudulent transfer claim pursuant to NRS 112.180(1)(a) because the claim exceeds four years and because the claim exceeds the one-year discovery window. Nevada's Uniform Fraudulent Transfers Act (UFTA) provides that a claim for fraudulent transfer is extinguished unless brought within the time limits set forth in NRS 112.230. The statute establishes that claims based on actual fraud must be brought within <u>four years</u> of the transfer or, if later, within one year after the transfer <u>was or could reasonably have been discovered</u>. NRS 112.230(1)(a) (emphasis added).

Here, the Receiver's First Claim for Relief must be extinguished as the claim is time-barred under the UFTA's statute of limitations. The Receiver's Complaint, which was filed on March 31, 2026, does not identify when the alleged fraudulent transfer from the Receivership Entities to Defendant took place. *See* ECF No. 1 at ¶ 60. However, we know that Beasley was taken into custody on March 3, 2022 and that the State Court appointed a Receiver in the *Murphy v. Beasley*, Case No. A-22-849806-B on March 30, 2022. Therefore, no alleged fraudulent transfer could have occurred after March 30, 2022 at the latest. Because all of the transfers took place more than four years before the filing of the Complaint, the Receiver's claims are barred

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

by NRS 112.230(1)(a)'s statute of limitations.

***ii. NRS 112.230's One-Year Tolling does not Apply to the Claim.***

*1. The Complaint Fails to Plead Plausible Facts to Substantiate a "Discovery Rule" Tolling.*

The Court should dismiss the Receiver's Complaint as the Receiver cannot use NRS 112.230(1)(a)'s one year discovery rule to survive Defendant's Motion to Dismiss. NRS 112.230(1)(a) contains a tolling or discovery mechanism allowing a claimant to potentially exceed the four-year statute. NRS 112.230(1)(a). Specifically, claimants may bring a claim later than the four years if the claimant brings the claim "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." *Id.*

Nevada's general discovery rule is nearly identical to NRS 112.230(1)(a)'s language as the general discovery rule holds that the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action. *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990). State law determines the application of tolling doctrines. *Reynolds v. Wolff*, 916 F. Supp. 1018, 1021 (D. Nev. 1996). However, when a plaintiff relies upon the discovery rule, they must plead facts alleging: 1) the time and manner of discovery; and 2) the circumstances excusing delayed discovery. *Petersen,* 106 Nev. 271 at 274, 20 P.2d 18, 20 (*citing Prescott v. United States*, 523 F. Supp. 918, 940 (D. Nev. 1981)).

The Court should dismiss Plaintiff's Complaint because it fails to plausibly allege facts substantiating the discovery rule. A detailed review of the Receiver's Complaint indicates that it lacks any facts properly demonstrating how many transfers occurred between the Receivership Entities and Defendant. Instead, it simply states that the "Receivership Entities fraudulently transferred a net total of $175,851.00 to Defendant Beasley, Jr., without an exchange of reasonably equivalent value." ECF No. 1 at ¶ 60. The Complaint fails to identify the dates and

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

number of transfers from the Receivership Entities to Defendant simply setting out a total transfer amount despite the fact that to complete the FAR the Receiver had to be in possession of records detailing all of the transfers and family members of the scheme's perpetrator were clearly on the Receiver's radar and J&J bank records, the bank records of the Beasley firm IOLTA and Beasley's personal account were all in the Receiver's possession in 2022 (by Receiver's own admission in multiple status reports filed with the court).

The Complaint further fails to identify the time or manner of discovery of the transfers. There are no dates for any transfer. There are no dates for the Receiver's discovery of the documents identifying the transfer(s). In order to have properly plead his causes of action, Plaintiff would have had to plead such facts as when subpoenas were issued to the Receivership Entities' bank accounts, which accounts the transfers were made from, dates that the banks provided documents pertinent to discovery requests, when the Receiver or its agents reviewed the documents, when the Receiver issued subpoenas to Defendant's bank accounts, or when it calculated the alleged fraudulently transferred $52,500.00 number. The Complaint is wholly lacking as to any time or manner of the discovery of the transfers pertinent to Defendant.

The Complaint similarly fails to allege any plausible facts excusing the Receiver's delayed discovery. While the Complaint and the accompanying FAR describe the process of the Receiver's investigation, the Complaint wholly fails to plead facts excusing the Receiver's delay. In order to survive a motion to dismiss, the Complaint would need to identify the date of the Receiver's discovery of Defendant's transfers, which it woefully fails to do. Second, the Complaint would need to demonstrate that the Receiver encountered some difficulty or was somehow justified in his delayed discovery. Similarly, there are simply no allegations to support a justified delay.

*2. The Claim Exceeds One Year from when the Receiver Discovered*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

*or Should have Discovered the Last Transfer.*

The Court should dismiss the Complaint because Plaintiff either knew or should have known of the transfers more than one year prior to filing the Complaint. For purposes of this section, one year prior to the date of the Complaint is March 31, 2025.

The Receiver's own document and reports show that the Receiver knew or should have known of the transfers well before March 31, 2025. The Receiver's First Quarterly Report details that as of August 1, 2022, the Receiver had obtained bank records, communications, and transactional information. Exhibit B. The Receiver's Seventh Quarterly Report identified that as of January 31, 2024, clawback proceedings against transferees were under investigation. Exhibit H. Finally, in his Eleventh Quarterly Report, the Receiver acknowledged that as of January 31, 2025, the forensic accounting was essentially done. Exhibit J.

The Receiver cannot plausibly contend that the statute of limitations remained tolled until the formal filing of the forensic accounting report itself on March 31, 2025. Long before any report was publicly filed, the Receiver and his agents necessarily possessed the operative facts underlying the present claims, including the identities of alleged net winners or other transferees, the amounts invested, the distributions received, and the Receiver's own damage calculations. Indeed, the preparation of a forensic accounting report presupposes that the underlying transactional analysis had already been completed.

The Receiver's own March 6, 2026, Motion for Order in Aid of Receivership further confirms that the Receiver had already identified alleged investor winners and transferees and completed the transactional analysis underlying these claims well before filing suit. Exhibit K at 3:1–12.

The Receiver further admitted that he had already determined, "in his reasonable business judgment," which investors should be sued and that the Receiver intended to file multiple

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

substantially identical complaints against those investors. *Id.* at 3:13–21. These judicial admissions independently establish that the Receiver had already identified the alleged "net winners," analyzed investor transaction histories, calculated alleged net transfer amounts, and determined whom to pursue before the filing of the present lawsuits. By extension that would include the alleged fraudulent transferees (family members and insiders) set forth in the instant Complaint. The Receiver therefore cannot plausibly contend that the claims remained undiscoverable until March 31, 2025 or later. Rather, the Receiver's own filings confirm that the alleged investor and other transferees had been identified as part of the Receiver's ongoing forensic accounting investigation. It should be noted that this indicates the Receiver knew of the transactions well before the expiration of the last transaction's four-year discovery period set forth in NRS 112.230(1)(a), supporting the contention that the one-year limitation should not even apply.

The Receiver's FAR expressly confirms that he had long possessed the tools and information necessary to identify alleged clawback claims. *See* Exhibit L.

Thus, by the Receiver's own admission, he had already developed a methodology to identify transferees, trace transfers from J&J accounts, and calculate alleged recoverable amounts well before March 31, 2025. Indeed, the filing of the completed forensic accounting report necessarily presupposes that the underlying investigative and transactional analysis had already been completed prior to the report's filing.

The Receiver's subsequent delay was therefore administrative and strategic—not the product of newly discovered facts. Nothing prevented the Receiver from filing earlier actions to preserve the statute of limitations based upon known transfers, identified transferees, and preliminary damages calculations. Courts routinely permit amendment of complaints, supplementation of damages analyses, and refinement of expert opinions during litigation. The

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Receiver instead chose to continue an open-ended investigation while allowing the statutory discovery period to expire.

Even under the Receiver's most favorable accrual theory, the claims remain untimely. If discovery occurred no later than January 31, 2024, when the Receiver expressly acknowledged potential "claw-back proceedings," NRS 112.230 required suit to be filed within one year thereafter. It was not. Instead, the Receiver waited until March 31, 2026, well outside the statutory discovery period.

Accepting the Receiver's position would effectively nullify the extinguishment provisions of NRS 112.230 by allowing a receiver to indefinitely extend the statute of repose while conducting a prolonged internal investigation. Nevada law does not permit such an outcome. The statute requires diligence—not perpetual investigation.

Because the Receiver had inquiry notice of the alleged fraudulent transfers years before filing suit, and because he failed to commence this action within the one-year discovery period mandated by NRS 112.230, the Receiver's claims are extinguished and must be dismissed with prejudice.

**b. The Receiver's Second and Third Claims for Avoidance Pursuant to NRS 112.180(1)(b) and NRS 112.190 are Legally Barred by NRS 112.230's Statutes of Repose.**

The Court should dismiss the Receiver's second and third claims because the claims are barred by the UFTA's statutes of repose. This Court has recently determined that NRS 112.230(b) and NRS 112.230(c)'s language are not statutes of limitations but statutes of repose. *Winkler v. Thompson*, No. 2:25-cv-1522-JCM-DJA, ECF 61 (D. Nev. April 10, 2026). In that case, this Court, referring to Nevada Supreme Court jurisprudence, identified the difference between a statute of limitations and a statute of repose by articulating:

> A statute of repose and a statute of limitations serve related but distinct

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

> purposes. A statute of repose bars a cause of action after a specified period of time, regardless of when the cause of action was discovered or a recoverable injury occurred. *FDIC v. Rhodes*, 336 P.3d 961, 965 (Nev. 2014); *Byrne as Tr. of UOFM Tr. v. Sunridge Builders, Inc.*, 475 P.3d 38, 41 (Nev. 2020). A statute of limitations, by contrast, prohibits a suit after a period of time that follows the accrual of the cause of action. *Allstate Ins. Co. v. Furgerson*, 766 P.2d 904, 906 n. 2 (Nev. 1988). A statute of repose conditions the cause of action on filing suit within the statutory period and, as the Supreme Court of Nevada has explained, "defines the right involved in terms of the time allowed to bring suit." *Rhodes*, 336 P.3d at 965 (*quoting P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2nd Cir. 2004)).

*Id.* Armed with this distinction, this Court concluded that the UFTA and specifically NRS 112.230(1)(b-c), which apply to claims arising under NRS 112.18(1)(b) and NRS 112.190(1-2), constitute statutes of repose. *Id.*

Here, the Receiver's second and third claims are barred by the UFTA's statutes of repose. The Receiver's second and third claims seek relief under NRS 112.180(1)(b) and NRS 112.190, respectively. The Receiver's Complaint fails to articulate any dates relative to the alleged transfers to Defendant Beasley, Jr. However as stated above, Beasly, the operator of the ponzi scheme was in custody on or about March 3, 2022. He would have been unable to transfer any funds to family after that date. Further, the State Court had appointed a receiver on March 30, 2022. The State Court receiver had access to the J&J Consulting Services, Inc. bank accounts and did not make any transfer to Defendant, Beasley, Jr. The Receiver's Complaint in this matter was filed on March 31, 2026, at least one day after the expiration of four years from any last possible transfer. Moreover, as detailed above, the Receiver's Complaint fails to allege when the prior transfers from the Receivership Entities to Defendant took place. These prior transfers exceed the statutes of repose to a greater extent than the last transfer identified in the Complaint. Therefore, the Court should dismiss the second and third claims with prejudice.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**c. The Complaint Fails to Plausibly Plead Lack of Reasonably Equivalent Value.**

To state a claim under Nevada's UFTA, the Receiver must plausibly allege that the challenged transfers were made without receipt of reasonably equivalent value. *See* NRS 112.180(1)(b); NRS 112.190. The Complaint fails to do so. The Receiver's own filings demonstrate that the claims asserted here are based upon generalized accounting assumptions rather than individualized factual allegations concerning the specific transfers at issue. In the Receiver's proposed form complaint attached to his March 6, 2026 Motion for Order in Aid of Receivership, the Receiver alleges that liability is determined on a "straight 'money in-money out' or 'MIMO' basis." Exhibit K at ¶ 53. But Nevada's UFTA requires transfer-specific analysis—not generalized netting assumptions. The Receiver's "MIMO" methodology improperly collapses years of separate transactions, contracts, repayments, and transfers into a single aggregated accounting figure while disregarding whether particular transfers were supported by value. Critically, the Receiver's own proposed complaint further admits that many challenged transfers may have constituted "gratuitous 'gifts,' informal 'loans,' unverified 'asset purchases,' or other transfers for no exchange of value." *Id.* at ¶ 44. In fact, the filed Complaint, the subject of this Motion to Dismiss, contains the exact same generalized assumptions and contains no specific factual allegations other than a named defendant and an amount with a conclusory statement as to lack of reasonably equivalent value. ECF No. 1 at ¶ 47 and 60.

These allegations are inherently speculative and conclusory. The Receiver's use of qualifying language such as "appear," "informal," and "unverified" confirms that the Receiver lacks individualized factual support establishing that specific transfers were actually unsupported by value. Indeed, "loans" and "asset purchases" are facially value-supported transactions. Yet the Complaint fails to identify which specific transfers allegedly lacked value, what consideration

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

was exchanged, why any consideration was inadequate, or why any particular transaction should be disregarded. Instead, the Receiver relies on generalized assumptions arising from the existence of a Ponzi scheme. But neither Nevada's UFTA nor federal pleading standards permit a receiver to avoid the obligation to plead specific facts demonstrating lack of reasonably equivalent value as to the particular transfers challenged.

Under *Twombly* and *Iqbal*, conclusory allegations and formulaic recitations of statutory elements are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Because the Receiver fails to plead individualized facts establishing lack of reasonably equivalent value for the challenged transfers, the Complaint fails to state a claim and must be dismissed.

**d. The Receiver's Unjust Enrichment Claim Fails as a Matter of Law Because NRS Chapter 112 Provides the Exclusive Governing Remedial Framework.**

Nevada law does not permit a plaintiff to pursue equitable unjust enrichment remedies where an adequate statutory remedy governs the same alleged conduct. The Receiver's unjust enrichment claim is entirely duplicative of his fraudulent transfer claims under the UFTA, and exists solely as an attempt to circumvent the statutory defenses and limitations imposed by that comprehensive legislative scheme.

Nevada courts have long recognized that unjust enrichment is unavailable where the law supplies an adequate legal remedy. The Nevada Supreme Court has held "unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 756, 942 P.2d 182, 187 (1997). Nevada Courts have long held that equitable relief is generally unavailable when the plaintiff has an adequate remedy at law. *See e.g. Mack v. Williams*, 522 P.3d 434, 450 (Nev. 2022); *Korte Constr. Co. v. State ex rel. Regents of Nev. Sys. of Higher Educ.*, 137 Nev. 378, 378, 492 P.3d 540, 541 (Nev. 2021); *Benson v. State Eng'r*, 131

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Nev. 772, 782 n.7, 358 P.3d 221, 228 n.7 (Nev. 2015); and *Smith v. Smith*, 68 Nev. 10, 22, 226 P.2d 279, 285 (Nev. 1951). Furthermore, restitution pursuant to unjust enrichment or quantum meruit is an equitable remedy which is unavailable when there is an adequate remedy at law. *In Re Wal-Mart Wage and Hour Employment Practices*, 490 F. Supp 2d 1091, 1125 (D. Nev. 2007) *see also State v. Second Judicial Dist. Court in & for Washoe County*, 49 Nev. 145, 241 P. 317, 322 (1925).

Nevada's UFTA establishes a detailed statutory framework governing allegedly fraudulent transfers, including the elements of avoidance claims, available remedies, defenses, and statutes of limitation. *See* NRS 112.180–112.230. The statutory scheme specifically defines when transfers may be avoided the extent of recoverable damages; defenses available to transferees, including good faith and reasonably equivalent value; and the applicable repose and discovery limitations periods. *See* NRS 112.210–112.230.

The Nevada Supreme Court has expressly recognized that UFTA remedies are limited to those authorized by statute and may not be expanded through ancillary common-law theories. *See Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114, 345 P.3d 1049 (2015). In *Cadle*, the Nevada Supreme Court rejected attempts to impose non-statutory accessory liability under Nevada fraudulent transfer law, holding that the UFTA itself defines the scope of available remedies and recovery. *Id.* at 1052-53. The Court explained that recovery is limited to the transferred asset or its value pursuant to NRS 112.210 and NRS 112.220. *Id.* at 1053–54. That reasoning applies with equal force here. The Receiver cannot evade the limitations imposed by Nevada's fraudulent transfer statutes by merely relabeling the same allegations as "unjust enrichment."

Here, the Receiver's unjust enrichment claim is wholly derivative of, and duplicative of, the UFTA causes of action. The Complaint alleges that Defendant received transfers exceeding

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

his investments and seeks recovery of those same transfers as purportedly "unjust." But those exact allegations are already governed by NRS Chapter 112, which expressly addresses whether transfers are avoidable, whether reasonably equivalent value was provided, whether the transferee acted in good faith, and the extent of any permissible recovery. *See* NRS 112.210–112.220.

Allowing the unjust enrichment claim to proceed would improperly permit the Receiver to circumvent the statutory limitations and defenses carefully imposed by the Legislature, including: 1) the one-year discovery limitation contained in NRS 112.230(1); 2) the statutory good-faith transferee defense; 3) the reasonably equivalent value defense; and 4) the statutory limitations on recovery under NRS 112.220.

Nevada law does not permit equitable doctrines to override or expand legislatively enacted remedial limitations. As recognized in *Cadle*, the UFTA already defines the universe of available remedies and recovery. The Receiver therefore cannot employ unjust enrichment as an impermissible "catch-all" theory to enlarge the statutory framework. This principle is particularly important in receivership litigation. A receiver merely "stands in the shoes" of the entity in receivership and acquires no greater rights than the entity itself possessed. *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995). Accordingly, the Receiver cannot invoke generalized equitable doctrines to expand the remedies authorized under Nevada's fraudulent transfer statutes.

This Court has articulated that the UFTA supplants claims for unjust enrichment. *Winkler v. Thompson*, No. 2:25-cv-1522-JCM-DJA, ECF 61 (D. Nev. April 10, 2026). This Court, agreeing with California's jurisprudence, stated "[w]here a viable UFTA claim exists, unjust enrichment is displaced." *Id.* The *Winkler v. Thompson* case is particularly compelling due to the fact that the Receiver was also the plaintiff in that case, the complaint in that matter is nearly identical to the Complaint in this action, and the Receiver sought unjust enrichment in a

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

receivership action, the same as here, to attempt to sidestep NRS 112's statute of limitations.

Moreover, the Complaint fails to plausibly allege the inequitable retention of benefits required to sustain an unjust enrichment claim under Nevada law. Unjust enrichment requires retention of a benefit "against the fundamental principles of justice or equity." *Topaz Mutual Co. v. Marsh*, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992). Accordingly, because Nevada's UFTA provides the exclusive governing statutory framework and remedial scheme for the transfers at issue, the Receiver's duplicative unjust enrichment claim fails as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

## VI. CONCLUSION

The Court should dismiss the Receiver's Complaint with Prejudice. The Receiver's first claim for fraudulent transfer under NRS 112.180(1)(a) is barred by the statute of limitations as the claim was filed more than four years following the transfer. The first claim is further barred because the claim was filed more than one year after the Receiver discovered or should have discovered the transfer. The Receiver's second and third claims are barred by NRs 112.230(1)(b-c)'s statutes of repose. Finally, the Receiver's unjust enrichment claim lacks legal merit because the UFTA supplants equitable relief such as unjust enrichment. Therefore, Defendant respectfully requests the Court dismiss the Receiver's claims against Defendant with prejudice.

DATED: June 29, 2026.

**KERR SIMPSON ATTORNEYS AT LAW**

/s/ P. Sterling Kerr, Esq
P. STERLING KERR, ESQ.
Nevada Bar No. 003978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
*Attorneys for Defendant Matthew T. Beasley*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on June 29, 2026, a true and correct copy of **DEFENDANT MATTHEW T. BEASLEY'S MOTION TO DISMISS RECEIVER'S COMPLAINT** was served to the following at their last known address(es), facsimile numbers and/or e-mail/other electronic means, pursuant to:

___X___ **BY E-MAIL AND/OR ELECTRONIC MEANS**: addressees (s) having consented to electronic service, I via e-mail, Electronic Service through the Court's electronic filing system, or other electronic means to the e-mail address(es) of the addressee(s).

/s/ Naomi Tijerino
An employee of KERR SIMPSON ATTORNEYS AT LAW